**CITY OF RAMSEY, Respondent,**

v.

**Arnold HOLMBERG, Appellant.**

No. C5–95–2346.

Court of Appeals of Minnesota.

May 28, 1996.

Review Denied Aug. 6, 1996.

303

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Larry Holmberg and the Amusement Center, Inc.[1] appeal from summary judgment

---

1. After this matter was fully briefed, argued, and submitted to this court for decision, Larry Holmberg and the Amusement Center, Inc. conveyed to Arnold Holmberg their interests in the business and real estate subject to the injunction at issue in this appeal. Accordingly, Arnold Holm-berg has been substituted as the appellant in the caption of the case, but because Larry Holmberg and the Amusement Center, Inc. litigated this case in the district court and in this court, we continue to refer to them in our opinion.

granted to respondent City of Ramsey (the city), arguing that a zoning ordinance is overbroad and vague. We affirm.

## FACTS

Larry Holmberg (Holmberg) owned and operated a business in the city called the Amusement Center, Inc. When it opened in 1990, it sold adult books, magazines, and novelties; it also operated booths for viewing adult movies. At the time the Amusement Center opened, the city had no ordinances governing the location of adult businesses, and there were no other adult businesses operating in the city. The city council decided to study how adult businesses affect neighborhoods and hired a professional city planner to investigate. The planner compiled and analyzed neighborhood impact studies from other cities and assessed the city's general zoning plan. Based on the planner's report and the city planning commission's recommendation, the city council concluded that adult businesses like the Amusement Center produce negative "secondary effects," such as increased crime, lower property values, and general neighborhood blight.

The council amended the city's zoning ordinance to categorize adult businesses into either "adult uses—principal" or "adult uses—accessory." Under the ordinance, an adult use is a business emphasizing the display or description of certain sexual activities or anatomical areas. An adult uses—principal business is defined as one having more than 10% of stock or floor area allocated to, or more than 20% of gross receipts derived from, any adult use. An adult uses—accessory business is defined as one having 10% or less of stock or floor area devoted to, or 20% or less of receipts derived from, adult movie rentals or magazine sales. The ordinance provides that an adult uses—principal business must be located at least 1,000 feet from certain protected uses, including residential zones, day-care centers, schools, parks, liquor stores, and churches. The Amusement Center violated the ordinance because it was an adult uses—principal business and was located within 1,000 feet of residentially-zoned

property, a day-care center, a church, and a bowling alley that serves liquor.

Holmberg unsuccessfully challenged the constitutionality of the ordinance in a federal court action, arguing that it violated the First and Fourteenth Amendments. *Schneider v. City of Ramsey*, 800 F.Supp. 815 (D.Minn. 1992), *aff'd sub nom. Holmberg v. City of Ramsey*, 12 F.3d 140 (8th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994).

The city then brought this action seeking declaratory relief and an injunction preventing Holmberg from operating his business. In opposition to the city's motion for summary judgment, Holmberg contended the ordinance was unconstitutional as applied to his changed business. Holmberg noted that he changed his business by eliminating the viewing booths and adding non-adult merchandise so that only 25% of the stock and floor area was devoted to sexually-oriented material. Holmberg argued that because the nature of his operation at the time of the federal litigation prevented him from raising an overbreadth claim, the doctrines of collateral estoppel and res judicata did not prevent him from again litigating the constitutionality of the ordinance.

The district court granted in part and denied in part the city's summary judgment motion. The court granted the motion with respect to the city's claim that the ordinance is a content-neutral time, place, and manner regulation. The court denied the remainder of the motion, concluding that there were genuine issues of material fact about (1) whether the studies relied on by the city address the effects of adult bookstores with no on-premises consumption of material and (2) whether the ordinance affects only the types of businesses shown to produce unwanted secondary effects. The court invited the city to supplement the record and stated that if the city could show there were no issues of material fact regarding these two factors, "a permanent injunction should issue."

The city renewed its motion for summary judgment and submitted copies of all the materials relied on by the city when it enacted the ordinance. The district court found

that, based on the expanded record, the ordinance was constitutional and granted the city's request for a permanent injunction. Judgment was entered for the city.

## ISSUES

1. Are the issues of res judicata or collateral estoppel properly before this court?

2. Is the city's zoning ordinance unconstitutionally overbroad?

3. Is the city's zoning ordinance unconstitutionally vague?

## ANALYSIS

1. The city argues that Holmberg is precluded by the doctrines of res judicata and collateral estoppel from litigating the constitutionality of the ordinance. Holmberg contends, and we agree, that this issue is not properly before this court because the city did not file a notice of review.

■ Even if the judgment below is ultimately in its favor, a party must file a notice of review to challenge the district court's ruling on a particular issue. *Arndt v. American Family Ins. Co.*, 394 N.W.2d 791, 793 (Minn.1986). If a party fails to file a notice of review pursuant to Minn.R.Civ.App.P. 106, the issue is not preserved for appeal and a reviewing court cannot address it. *Potter v. LaSalle Sports & Health Club*, 368 N.W.2d 413, 418 (Minn.App.1985), *aff'd*, 384 N.W.2d 873 (Minn.1986). Under the procedural posture of this case, it is appropriate for this court to review both of the district court's orders on the city's motions for summary judgment. *See* Minn.R.Civ.App.P. 103.04 (on appeal from judgment, appellate court may review any order involving merits or affecting judgment).

The city argued to the district court that the constitutionality of the zoning ordinance was fully litigated in the federal action, and res judicata or collateral estoppel barred the claim in state court. The district court ruled against the city on this issue. In its order filed January 20, 1995, the district court ruled that in the federal litigation, Holmberg would have been precluded from raising the overbreadth of the provisions as a constitutional challenge * * *, since [he]

clearly fell within the core of the zoning ordinance provision.

*See Dorso Trailer Sales v. American Body & Trailer*, 482 N.W.2d 771, 774 (Minn.1992) (res judicata only bars matters that were litigated or could have been litigated). In its renewed summary judgment motion, the city did not argue res judicata or collateral estoppel, and in its September 5, 1995, order, the district court did not address the issue, stating that it was bound to follow the rule of case as determined by its first order. Because the issue was decided adversely to the city, the city was required to file a notice of review in order for this court to address it.

■ 2. Determining whether an ordinance is constitutional is a question of law, and this court need not defer to the district court's conclusions. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). An ordinance is presumed constitutional and the burden of proving otherwise rests on the party attacking its validity. *City of St. Paul v. Dalsin*, 245 Minn. 325, 329, 71 N.W.2d 855, 858 (1955). An overbroad restriction of expression is unconstitutional. *New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982). The doctrine of overbreadth, which invalidates entire statutes, is " 'strong medicine' " and should be applied cautiously. *Osborne v. Ohio*, 495 U.S. 103, 122, 110 S.Ct. 1691, 1703, 109 L.Ed.2d 98 (1990) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)).

■ Because the city's ordinance does not ban adult businesses completely, but merely limits the areas in which they may operate, it is properly analyzed as a time, place, and manner regulation. *See City of Renton v. Playtime Theatres*, 475 U.S. 41, 46, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986) (time, place, and manner regulation analysis applies where ordinance does not ban adult business altogether, but merely regulates its location). Such regulations are valid if they are content-neutral and are "designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47, 106 S.Ct. at 928.

Local governments may restrict adult businesses in order to curb their unwanted "secondary effects." *Id.* at 49, 106 S.Ct. at 929–30. In determining whether the secondary effects of adult businesses justify regulation, a city is not required to conduct its own study, but may rely on the studies and experiences of other cities,

> so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

*Id.* at 51–52, 106 S.Ct. at 931.

Holmberg argues that the ordinance is overbroad in its definition of "adult uses—principal" because it is not limited to the specific types of businesses that have been shown elsewhere to cause adverse secondary effects. He claims no studies have shown that businesses such as his current operation—those with off-premises consumption and a majority of stock and floor space devoted to non-adult material—cause undesirable secondary effects. This same argument was rejected by the Eighth Circuit in *ILQ Investments v. City of Rochester,* 25 F.3d 1413 (8th Cir.), *cert. denied* — U.S. —, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994). In *ILQ,* an adult business argued that it was unreasonable for the City of Rochester to rely on other cities' studies because they did not address similar businesses—those that offer non-sexually explicit as well as sexually explicit materials and do not allow on-premises consumption of such materials. *Id.* at 1417. The court soundly rejected this argument, stating:

> That is simply not the law. * * * Under *City of Renton,* Rochester need not prove that Downtown Book and Video would likely have the exact same adverse effects on its surroundings as the adult businesses studied by Indianapolis, St. Paul, and Phoenix. So long as Ordinance No. 2590 affects only categories of businesses reasonably believed to produce at least some of the unwanted secondary effects, Rochester "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." * * * Even if Downtown Book and Video is a new type of adult business, it may not avoid time, place, and manner regulation that has been

justified by studies of the secondary effects of reasonably similar businesses.

*Id.* at 1418 (footnote omitted) (quoting *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 71, 96 S.Ct. 2440, 2453, 49 L.Ed.2d 310 (1976) (plurality opinion)).

We find the district court was correct in concluding that in this case, as in *ILQ,* the city's reliance on voluminous studies, reports, and reference materials satisfies the *City of Renton* test. Any businesses affected by the ordinance are those that the city reasonably believed cause undesirable secondary effects.

The council had before it a planning report that specifically addressed the city's concerns. In preparing the report, the planner examined articles, reports, and background materials from throughout the United States, as well as information provided by the city. In addition to the planning report, the city examined reports from the cities of Rochester, St. Paul, Phoenix, and Seattle, which deal with "reasonably similar businesses." As the district court noted, most of the studies and reports relied on by the City of Ramsey "are the same studies upon which the City of Rochester relied in *ILQ.*" The council had sufficient information about adult businesses in general to enact a valid ordinance.

Holmberg argues that the record here—unlike that in *ILQ*—consists of two studies showing that the sale of purely take-home merchandise does not produce unwanted secondary effects. These studies were not before the city, however, at the time it enacted the ordinance. Moreover, they fail to raise a genuine issue as to whether the city reasonably believed that the businesses to which the ordinance applies produce at least some of the unwanted secondary effects experienced by other cities.

3. Part of the definition of an "adult uses-principal" business is that more than 20% of gross receipts are derived from an adult use. Holmberg argues that the ordinance is vague because it does not specify a time period during which the 20% figure is to be calculated. We disagree. The lack of a definite time period in which to apply the

terms of the ordinance is not fatal. *See generally Humenansky v. Minnesota Bd. of Med. Examiners,* 525 N.W.2d 559, 564 (Minn.App.1994) (statute is not unconstitutionally vague merely because some marginal fact situation may pose difficulty of application), *review denied* (Minn. Feb. 14, 1995).

## DECISION

Ordinance 90–23 is neither impermissibly overbroad nor vague.

**Affirmed.**

DAVIES, Judge (dissenting).

I respectfully dissent.

In prior litigation it was determined that the City of Ramsey ordinance was neither facially unconstitutional nor unconstitutional as applied to Amusement Center, Inc. *Holmberg v. City of Ramsey,* 12 F.3d 140 (8th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994) (*Holmberg I* ). Holmberg now contends, however, that Amusement Center's operation is significantly different from its prior business. Holmberg seeks again to challenge—on constitutional grounds—the application of the ordinance to Amusement Center.

In my view, Amusement Center's current off-sale operation is so significantly different from its prior on-sale business that Holmberg should have the opportunity to again challenge the ordinance on constitutional grounds; not facially, of course, but as applied to his current operation.

The on-sale/off-sale distinction is fundamental. Amusement Center now confronts the court with an issue regarding the underpinnings of the ordinance distinct from the question faced in *Holmberg I.* The finding of constitutionality in *Holmberg I* would not be controlling as to a third party with an off-sale business; it also should not be controlling as to Holmberg in his current conduct of this significantly different off-sale business.

*ILQ Investments v. City of Rochester,* 25 F.3d 1413 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994), likewise, falls short of conclusiveness on the

absence of an on-sale/off-sale distinction that might be applicable to Holmberg.