*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1766**

Danika Paige Anastasi, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed September 15, 2014
Reversed
Larkin, Judge**

Dakota County District Court
File No. 19AV-CV-13-1351

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, Minnesota (for respondent)

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Larkin, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges the district court's order rescinding the implied-consent revocation of respondent's driver's license. We reverse.

**FACTS**

After observing a vehicle cross the fog line on a roadway two times, Minnesota State Patrol Lieutenant Brian Reu stopped the vehicle and identified the driver as respondent Danika Paige Anastasi. Following a brief investigation, Lieutenant Reu arrested Anastasi for driving under the influence of alcohol. He transported Anastasi to the Dakota County Jail and read her Minnesota's implied-consent advisory. Anastasi indicated that she understood the advisory and declined to contact an attorney. Lieutenant Reu asked Anastasi if she would take a breath test; she replied, "sure." The results of the test indicated that Anastasi's alcohol concentration was above the legal limit.

Based on the results of the breath test, appellant commissioner of public safety revoked Anastasi's driver's license under Minnesota's implied-consent law. Anastasi petitioned for judicial review of the license revocation. The district court considered Anastasi's arguments that "the United States Supreme Court in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), rendered Minnesota's 'Implied Consent Law' unconstitutional, the alcohol concentration test was obtained in violation of her constitutional rights, the test should be suppressed, and the revocation should be rescinded." The district court ultimately determined that "no unconstitutional condition is imposed by Minnesota's

'Implied Consent Law'"; Anastasi's "request to have Minnesota's 'Implied Consent Law' declared unconstitutional [on substantive-due-process grounds] shall be denied"; Anastasi's breath test "was not conducted in accordance with the United States and Minnesota Constitutions"; the commissioner failed "to establish an exigency justifying a warrantless search"; "the circumstances presented in the record are insufficient in this case to conclude [that Anastasi] 'freely and voluntarily' gave consent to the" breath test; the warrantless breath test was not justified under the "special needs" doctrine; and the exclusionary rule applies in this case.

In sum, the district court concluded that Minnesota's implied-consent law is "not unconstitutional," but that "the search of [Anastasi] was not conducted in accordance with the United States and Minnesota Constitutions." The district court therefore ruled that "[t]he alcohol concentration evidence derived from the unconstitutional search must therefore be suppressed and the license revocation rescinded."

The commissioner appeals.

## D E C I S I O N

### I.

We begin our analysis with the district court's determination that Anastasi did not freely and voluntarily consent to the breath test. The United States and Minnesota Constitutions prohibit the unreasonable search and seizure of "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. The collection of a breath sample is a search under the Fourth Amendment. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 709 (Minn. App. 2008). Warrantless searches are per se unreasonable,

3

subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). The state bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001). One such exception is consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973). "[T]he 'clearly erroneous' standard controls [appellate] review of a district court's finding of voluntary consent." *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011).

In *State v. Brooks*, the supreme court reiterated that the "police do not need a warrant if the subject of the search consents." 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The supreme court described the consent exception to the warrant requirement as follows:

> For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented. Whether consent is voluntary is determined by examining the totality of the circumstances. Consent to search may be implied by action, rather than words. And consent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned. An individual does not consent, however, simply by acquiescing to a claim of lawful authority.
>     . . . .
>     . . . This analysis requires that we consider the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.

*Id*. at 568-69 (quotations and citations omitted).

The supreme court explained that "the nature of the encounter includes how the police came to suspect [the defendant] was driving under the influence, their request that he take the chemical tests, which included whether they read him the implied consent

4

advisory, and whether he had the right to consult with an attorney." *Id.* at 569. The supreme court concluded that Brooks voluntarily consented to three searches because he did not dispute that the police had probable cause to believe that he had been driving under the influence; he did not "contend that police did not follow the proper procedures established under the implied consent law"; the police read "the implied consent advisory before asking him whether he would take all three tests, which makes clear that drivers have a choice of whether to submit to testing"; the "police gave Brooks access to telephones to contact his attorney and he spoke to a lawyer"; and "[a]fter consulting with his attorney, Brooks agreed to take the tests in all three instances." *Id.* at 569-70. The supreme court further noted that, although Brooks was in custody, he "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody." *Id.* at 571.

The commissioner relies on *Brooks* and argues that "the totality of the circumstances demonstrate that [Anastasi's] agreement to submit to chemical testing was freely and voluntarily given." In finding otherwise, the district court reasoned that when the officer requested consent, Anastasi had already been placed under arrest, transported in a squad car to a secure location, and informed that if she refused to consent, she would be charged with a crime. The district court also reasoned that Anastasi's decision making was impaired by alcohol and that, although she was offered an opportunity to confer with an attorney, she did not communicate with an attorney or obtain legal advice regarding whether to consent.

The district court's analysis is thorough and supported with citations to caselaw. However, the district court did not have the benefit of the Minnesota Supreme Court's decision in *Brooks* when it made its decision. And under *Brooks*, the totality of the circumstances does not suggest that Anastasi was coerced into providing a breath sample.

As in *Brooks*, Anastasi does not dispute that Lieutenant Reu had probable cause to believe that she had been driving under the influence or that he followed proper procedures under the implied-consent law. Lieutenant Reu read Anastasi Minnesota's implied-consent advisory. Anastasi indicated that she understood it, and she had the opportunity to contact an attorney. The fact that Anastasi did not contact an attorney is not dispositive. *See id*. at 569 (stating that the totality of the circumstances includes whether the defendant "had the right to consult with an attorney"). Lastly, when Anastasi agreed to take a breath test, she had not been confronted with repeated police questioning or held in custody for an unreasonable period of time.

Anastasi argues that "[w]hile the supreme court in *Brooks* concluded that there are extreme circumstances under which a veteran drunk driver would not be intimidated by the threats inherent in the implied consent process, it by no means suggested that reading the advisory alone could not overbear the free will of a person arrested for the very first time." She asserts that the "evidence shows that [her] submission to the test was far more likely the result of the trooper's threat of criminal prosecution" because she was compliant, had never been arrested before, was impaired by alcohol, was in custody, and was informed that test refusal is a crime.

But in *Brooks*, the supreme court rejected the argument that consent is per se involuntary because of the attendant threat of a criminal charge for test refusal. *See id*. at 570 ("[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test."). Moreover, the supreme court held that Brooks's consent was voluntary even though he was impaired by alcohol, under arrest, and in custody. *Id*. at 565-66, 572. Although the circumstances here are distinguishable from those in *Brooks* in that this appears to have been Anastasi's first arrest for driving while impaired and she was compliant with law enforcement, those distinctions do not suggest that her will was overborne. *See id*. at 571 ("[N]othing in the record suggests that Brooks 'was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired.'").

Anastasi also argues that the *Brooks* holding "is directly contrary to binding United States Supreme Court precedent" and notes that "Brooks has filed a petition for a writ of certiorari in the United States Supreme Court, asking the Court to correct the *Brooks* decision." But the United States Supreme Court did not grant the writ. *Brooks v. Minn.*, 134 S. Ct. 1799 (2014). And although there may be inconsistencies between *Brooks* and prior caselaw regarding consent, this court is nonetheless bound to apply and follow *Brooks* because we must follow Minnesota Supreme Court precedent. *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010).

Under *Brooks*, Anastasi's consent was freely and voluntarily given. Because she agreed to provide a sample of her breath for chemical analysis, a warrant was not required, and the collection of the sample did not violate the United States or Minnesota

7

Constitutions. The district court therefore erred by rescinding the implied-consent revocation of Anastasi's driver's license and reversal is appropriate. Because the warrantless collection was permissible under the consent exception as applied by the Minnesota Supreme Court in *Brooks*, we do not address the commissioner's alternative arguments for reversal.

## II.

Anastasi contends that the revocation of her license "had to be rescinded because the criminal test refusal statute is unconstitutional and therefore the implied consent advisory read to [her] violated her constitutional right to due process of law and the doctrine of unconstitutional conditions." The commissioner contends that those arguments are not properly raised in this appeal. We agree.

"After an appeal has been filed, respondent may obtain review of a judgment or order entered in the same underlying action that may adversely affect respondent by filing a notice of related appeal." Minn. R. Civ. App. P. 106. "To challenge a district court ruling, a respondent has to file a notice of review, '[e]ven if the judgment below is ultimately in its favor.'"[1] *State v. Botsford*, 630 N.W.2d 11, 18 (Minn. App. 2001) (quoting *City of Ramsey v. Holmberg*, 548 N.W.2d 302, 305 (Minn. App. 1996), *review denied* (Minn. Aug. 6, 1996)), *review denied* (Minn. Sept. 11, 2001). "'If a party fails to file a notice of review . . . , the issue is not preserved for appeal and a reviewing court

---

[1] By order dated October 16, 2009, the supreme court amended the rules of civil appellate procedure, effective January 1, 2010, to replace the "notice of review" with a "notice of related appeal." The 2009 comments to that rule state, in part, that "[t]he new procedure is not intended to change the scope of appellate review."

8

cannot address it.'" *Id.* (quoting *Holmberg*, 548 N.W.2d at 305); *see also State v. Bren*, 704 N.W.2d 170, 176-77 (Minn. App. 2005) (declining to address an issue raised by respondent on appeal because respondent did not file a notice of review), *review denied* (Minn. Dec. 13, 2005).

In ruling on Anastasi's petition for judicial review, the district court considered and rejected her arguments that "the 'Implied Consent Law' set forth in Minnesota Statute[s] §§ 169A.50-.63 creates an 'unconstitutional condition'" and that "the 'Implied Consent Advisory' violated [her] due process rights under both the United States and Minnesota Constitutions." Because Anastasi seeks review of the district court's adverse ruling on constitutional arguments that she made in district court and she did not file a notice of related appeal, the issues are not preserved for appeal, and we do not address their merits.

**Reversed.**