This opinion will be unpublished and
 may not be cited except as provided by
 Minn. Stat. § 480A.08, subd. 3 (2014).

 STATE OF MINNESOTA
 IN COURT OF APPEALS
 A16-0794

 Jesse James O’Brien,
 Appellant,

 vs.

 City of Mentor,
 Respondent.

 Filed January 3, 2017
 Affirmed as modified
 Connolly, Judge

 Polk County District Court
 File No. 60-CV-14-1896

Konstandinos Nicklow, Meshbesher & Spence, Ltd., Minneapolis, Minnesota (for
appellant)

Daniel P. Kurtz, League of Minnesota Cities, St. Paul, Minnesota (for respondent)

 Considered and decided by Connolly, Presiding Judge; Reilly, Judge; and

Toussaint, Judge.


 Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.
 UNPUBLISHED OPINION

CONNOLLY, Judge

 Appellant challenges the summary-judgment dismissal, on grounds of recreational-

use immunity, of his claims for personal injuries suffered when he ran into two metal cables

stretched taut between a set of tennis courts owned by respondent-city. Appellant asserts

that the district court erred by determining as a matter of law that the trespasser exception

to recreational-use immunity could not apply because appellant failed to present sufficient

evidence to create fact issues regarding (1) whether the cables were likely to cause death

or serious bodily injury; and (2) whether the city had actual knowledge that they were likely

to do so. We conclude that the cables constituted a condition likely to cause death or

serious bodily injury but, because the city did not have actual knowledge of the condition,

we affirm.

 FACTS

 On April 5, 2012, appellant Jesse James O’Brien, then 16, was playing with his

friends in a park owned by respondent City of Mentor. At dusk, the group decided to play

a game of cops and robbers.1 Appellant was running away from his friend who was a “cop”

toward what he believed to be a gap between the nets of the two tennis courts. Appellant

tried to run between the nets and struck two crossed metal cables at approximately waist

height. The friend chasing appellant testified in his deposition that, after seeing appellant

1
 Cops and robbers is a version of tag, intended to be played in the dark in which the players
are split up into “cops” and “robbers.” The cops try to tag the robbers, putting them “in
jail” and the robbers try to touch the jail and say “jail break” in order to release the robbers
who have been caught.

 2
strike the cables, he raised his hands before striking the cables himself. The friend testified

that appellant “hit [the cable], u-shaped and then he went backwards and landed on his

back.” Appellant later experienced very serious complications from the injuries he

received when he struck the cables.

 Respondent has had tennis courts in the park for many years and, when the tennis

nets began to sag, two metal cables were extended and affixed to the opposite court’s post

in order to keep the nets taut. The crossed cables had been in place since at least 2003 and

are approximately the same diameter as an ink pen. Since the cable setup was put in place,

there have been no injuries, other than appellant’s, or any complaints regarding the cable

setup.

 In its motion for summary judgment, respondent argued that it was protected by

recreational-use immunity and was thus immune from the lawsuit because appellant could

not establish all the elements of the trespasser exception to recreational-use immunity. The

district court granted summary judgment in respondent’s favor, ruling that appellant

provided sufficient evidence to create a question of fact as to whether or not the cables

constituted a hidden condition, but determining that the cable setup was not a condition

likely to cause death or serious bodily harm and that respondent did not have actual

knowledge that the cable setup was likely to cause death or serious bodily harm. Appellant

challenges the summary judgment.

 DECISION

 “On appeal from summary judgment, we must review the record to determine

whether there is any genuine issue of material fact and whether the district court erred in

 3
its application of the law.” Dahlin v. Kroening, 796 N.W.2d 503, 504-05 (Minn. 2011).

“We review a district court’s summary judgment decision de novo. In doing so, we

determine whether the district court properly applied the law and whether there are genuine

issues of material fact that preclude summary judgment.” Riverview Muir Doran, LLC v.

JADT Dev. Grp., LLC, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). “[W]hen

the nonmoving party bears the burden of proof on an element essential to the nonmoving

party’s case, the nonmoving party must make a showing sufficient to establish that essential

element.” DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997); see also Schroeder v.

St. Louis County, 708 N.W.2d 497, 507 (Minn. 2006) (describing substantial evidence as

the “incorrect legal standard” and clarifying that “summary judgment is inappropriate if

the nonmoving party has the burden of proof on an issue and presents sufficient evidence

to permit reasonable persons to draw different conclusions”) (emphasis omitted).2

 Municipalities are generally liable for their torts. Minn. Stat. § 466.02 (2014).

However, Minn. Stat. § 466.02 does not apply to:

 [a]ny claim based upon the construction, operation, or
 maintenance of any property owned or leased by the
 municipality that is intended or permitted to be used as a park,
 [or] as an open area for recreational purposes . . . if the claim
 arises from a loss incurred by a user of park and recreation
 property or services. Nothing in this subdivision limits the
 liability of a municipality for conduct that would entitle a
 trespasser to damages against a private person, except as
 provided in subdivision 23.

2
 Appellant argues that this alone is sufficient to remand the case, but because we review
the district court decision de novo, we can rely on the correct standard rather than
remanding the case. See Schroeder, 708 N.W.2d at 507 (setting out correct standard and
reviewing according to it).

 4
 3
Minn. Stat. § 466.03, subd. 6(e) (2014) (recreational immunity) (emphasis added).

Neither party disputes that this is a case that involves the maintenance of a park and

damages incurred by a user of the park. Therefore, respondent is immune from appellant’s

claim unless appellant can show that the conduct of respondent would entitle a trespasser

to damages against a private person. See id. This language is known as the “trespasser

exception” to recreational-use immunity.

 “Minnesota courts use the standard for liability to adult trespassers set forth in the

Restatement (Second) of Torts § 335.” Prokop v. Indep. Sch. Dist. No. 625, 754 N.W.2d

709, 714 (Minn. App. 2008). “Under this standard, respondent will be liable only if (1) the

artificial condition is likely to cause death or serious bodily harm; (2) the landowner has

actual knowledge of that danger; and (3) the danger is concealed or hidden from the

trespasser.” Id. (quotation omitted). Actual knowledge is required; the fact that a

municipality should have known of the danger, or have constructive knowledge of it, is

insufficient. Id. at 715 (stating that the most recent precedential case on point establishes

this requirement); but see Nolan v. Soo Line R.R. Co., 474 N.W.2d 4, 6 (Minn. App. 1991)

(“A plaintiff is not required to show a landowner had actual knowledge that an artificial

condition was dangerous . . . .”), review denied (Minn. Sept. 13, 1991).

3
 As respondent points out, that “[recreational use i]mmunity provides immunity from suit,
not just liability, and therefore it is effectively lost if a case is erroneously permitted to go
to trial.” Minder v. Anoka County, 677 N.W.2d 479, 483 (Minn. App. 2004).

 5
 The district court concluded that (1) the cables were not an inherently dangerous

condition that was likely to cause death or serious bodily harm and (2) respondent did not

have actual knowledge that the cable setup was likely to cause death or serious bodily harm.

I. Were the cables an inherently dangerous condition that was likely to cause death
 or serious bodily harm?

 Conditions found to satisfy [the likely to cause death or serious
 bodily harm] requirement generally have inherently dangerous
 propensities, such as a high voltage electrical wire. The
 Restatement requires the condition to be likely to cause serious
 bodily harm, not that serious bodily harm “might” actually
 result. The injury suffered does not define the requirement.
 Otherwise, any artificial condition “could be” likely to cause
 death or serious bodily harm under the right circumstances.

Johnson v. State, 478 N.W.2d 769, 773 (Minn. App. 1991) (citation omitted) (holding that

the remote possibility that death or serious bodily harm could result when a person falls

does not make a raised sidewalk joint rise to the level of an inherently dangerous condition),

review denied (Minn. Feb. 27, 1992).

 However, Minnesota courts have held that conditions that do not have inherently

dangerous propensities can constitute a condition likely to cause death or serious bodily

harm. In Unzen v. City of Duluth, a hidden “metal nosing” protruded from each stair at a

golf course and caused a person to fall down a flight of stairs was held to constitute a

condition likely to cause serious bodily harm or death. 683 N.W.2d 875, 881 (Minn. App.

2004), review denied (Minn. Aug. 3, 2004). Due to (1) the potential for injuries involved

with falling down a flight of stairs; (2) the presence of case law “replete with instances

where falling down a flight of stairs ha[d] caused death or serious bodily harm[;]” and

(3) the fact that, during the tenure of a supervisor of the golf course, approximately 12

 6
people fell using the stairway, the court determined that the flight of stairs was an inherently

dangerous condition. Id.4

 Appellant argues that we should follow Unzen and other unpublished decisions to

determine that the cable setup constitutes a condition likely to cause death or serious bodily

harm. We agree for two reasons. First, there is a serious potential for injuries involved

with running into cables that are difficult to see. Lacerations of the stomach, neck, or eyes

could all result from a child or adult running into the cables. Second, a nylon rope placed

as a barricade around a pond, four feet off of the ground, when the pond was known to be

frequented by snowmobilers, has been held to constitute a dangerous condition likely to

cause death or serious bodily harm. Bacon, 1995 WL 434446 at *3.5 Under those

circumstances, a rope placed at head or body level could be an inherently dangerous

condition when struck at high speed. Id. The facts of this case are analogous. Children

4
 While Unzen is the only published Minnesota case cited for the proposition that
conditions that do not have inherently dangerous propensities can still constitute a
condition likely to cause serious bodily harm or death, several unpublished and foreign
decisions support the proposition that inherently dangerous propensities are not always
necessary. See Kaloustian v. Dakota Fence Co., A14-0589, 2015 WL 46479, at *5 (Minn.
App. Jan. 5, 2015) (stating that the court was “not prepared to hold” that a “chinning bar”
that rotated on its own axis did not present a dangerous condition as a matter of law), review
dismissed (Minn. Mar. 3, 2015); Bacon v. Indep. Sch. Dist., #192, C7-95-212, 1995 WL
434446 at *3 (Minn. App. July 25, 1995) (holding that a white nylon rope suspended four
feet off the ground across a snowmobile trail constituted an inherently dangerous condition
when struck at high speed); see also Humphrey v. Glenn, 167 S.W.3d 680, 685-86 (Mo.
2005) (holding that a 3/8” cable wire strung across a private road that struck a driver of a
four-wheeler was inherently dangerous).
5
 Unpublished cases are not precedential. Minn. Stat. § 480A.08, subd. 3 (2014). In this
case we cite unpublished cases for their persuasive value only.

 7
and adults are known to run at high speeds around tennis courts and thus metal cables at

head or body level are similarly inherently dangerous.

 On the evening of the accident, the light on the tennis courts was not working and

the maintenance worker for respondent was aware of that fact. Respondent was not

responsible for changing the lights; a private contractor was responsible. The maintenance

worker for respondent noticed the light was out and notified the city, which notified the

private company, which in turn came to replace the light, but not until after the accident

had occurred.

II. Did respondent have actual knowledge that the cable setup was likely to cause
 death or serious bodily harm?

 We must also consider whether respondent had actual knowledge that the cables

were likely to cause serious bodily harm prior to the accident. We conclude that respondent

did not have such knowledge. Appellant argues that the testimony of T.F., a grounds

keeper and maintenance man for the city and L.M., the Mayor of the City of Mentor since

2005, evidences actual knowledge that the condition was likely to cause death or serious

bodily harm. T.F. testified at his deposition:

 Q. And in fact, you would agree with me that if someone
 didn’t know that cable was there and ran into it at full speed,
 it’s likely they would get seriously injured. Right?
 A. Very well, yes.
 Q. And it didn’t take [appellant’s] injury for you to know
 that. Right?
 A. No.
 Q. You knew that before he got injured?
 A. I guess.
 Q. You knew that risk of serious likely injury before he got
 injured, did you?
 A. I don’t know.

 8
 Q. Wouldn’t be –
 A. For instance, my kids played there and not a thing
 happened. Nephews and cousins and nieces, stuff like that.
 But in my theory, yes, it is hazardous.

But T.F. also testified:
 Q. The point I’m trying to make is, you realized before
 [appellant’s] injury that if someone didn’t know that those
 cables were there and they ran into it full speed –
 A. I didn’t realize it, no.
 Q. You didn’t realize that someone would likely get
 seriously injured if they ran into it?
 A. I didn’t realize it, no.

(Emphasis added.) T.F. did request new cables for the nets from respondent prior to the

accident but he failed to tell respondent at that time why new cables were necessary.

Respondent told him “[i]f it ain’t broken don’t fix it.” T.F. stated, at his deposition after

the injury, that replacing the cable setup with new cables that did not cross would “look a

lot nicer and [be] a lot easier on [T.F.]” and would be a lot safer. However, T.F. did not

discuss the safety of the cable setup with the mayor until after appellant’s injury.

 The mayor testified at his deposition that he knew about the cable setup prior to the

accident. Respondent argues that any comments made by the mayor pertaining to the safety

of the cable setup are mere conjecture. We agree. The mayor did not state that there were

any prior complaints or injuries, and all conversations he had with T.F. regarding the safety

of the cable setup occurred after the accident.

 We conclude that the district court did not err in concluding that respondent did not

have actual knowledge that the condition was likely to cause death or serious bodily harm.

It is undisputed that the cables had been set up in the same manner for ten years without

any complaints or reports of injury. “[A] lack of complaints has been held to be sufficient

 9
to demonstrate lack of knowledge.” Prokop, 754 N.W.2d at 715. While not dispositive,

the lack of complaints does increase the likelihood that respondent did not have actual

knowledge that the condition was likely to cause serious bodily harm or death. See

Kaloustian, 2015 WL 46479, at *3-4 (concluding that sufficient evidence of actual

knowledge of a condition likely to cause serious bodily harm or death existed despite there

being no prior injury reports because a teacher who was told of the dangerous condition

and said she would tell the janitor to fix it).6 No evidence exists that anyone, including

T.F., knew that the cable setup was likely to cause death or serious bodily harm before

appellant’s injury.

 Because respondent did not have actual knowledge that the condition was likely to

cause death or serious bodily injury prior to appellant’s accident, the district court did not

err in granting summary judgment in favor of respondent.

 Affirmed as modified.

6
 Respondent argues that the cable condition was open and obvious upon brief inspection.
However, the district court ruled that sufficient evidence exists against this theory and
respondent has not filed a notice of related appeal. An issue decided adversely to
respondent is not properly before an appellate court if no notice of related appeal is filed.
City of Ramsey v. Holmberg, 548 N.W.2d 302, 305 (Minn. App. 1996), review denied
(Minn. Aug. 6, 1996). Failure to file a notice of related appeal limits issues on appeal to
those properly raised by appellant. Nordling v. Northern States Power Co., 465 N.W.2d
81, 87 (Minn. App. 1991), rev’d on other grounds, 478 N.W.2d 98 (Minn. 1991).

 10