Ai Viet Thi NGUYEN, Appellant,

v.

Phu Chau NGUYEN, et al., Defendants,

Scott County, Respondent.

No. C9–96–2246.

Court of Appeals of Minnesota.

July 8, 1997.

Robert F. Mannella, Randall J. Fuller, Babcock, Locher, Neilson & Mannella, Anoka, for Appellant.

Stephen G. Andersen, Joseph J. Langel, Ratwik, Roszak & Maloney, P.A., Minneapolis, for Respondent.

Considered and decided by HUSPENI, P.J., and CRIPPEN and WILLIS, JJ.

## OPINION

CRIPPEN, Judge.

Appellant, who was injured in a traffic accident, challenges the trial court's decision granting respondent county discretionary immunity in her negligent maintenance claim involving an allegedly dangerous intersection. We affirm.

## FACTS

In May 1994, Phu Chau Nguyen was driving westbound on County State Aid Highway 42, a two-lane, undivided highway, with his sister, appellant Ai Viet Nguyen. As the brother slowed to make a left turn onto County Road 83, he had difficulty observing whether the stoplight was green or red due to darkness and poor weather. As he made the left turn, a vehicle traveling eastbound on Highway 42 struck the passenger side of his car, injuring appellant. At the time, the intersection had neither a turn lane nor a turn signal for traffic turning left onto County Road 83.

Appellant sued respondent Scott County, alleging, among other claims, negligent maintenance and negligent failure to warn of the dangerous intersection. Determining that the county had discretionary immunity, the trial court granted partial summary judgment for the county on the negligent maintenance claim. On its own motion, the court subsequently granted summary judgment for the county on the failure to warn claim because appellant had failed to show a genuine fact issue on his claim that the lack of better signs was a proximate cause of the accident.

## ISSUE

Did the trial court err, as a matter of law, in concluding that respondent had discretionary immunity from appellant's negligent maintenance claim?

## ANALYSIS

The determination of whether a governmental action is a discretionary function is a legal question subject to de novo review. *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 786 (Minn.1989). In determining whether particular conduct is protected, courts must interpret the discretionary function exception narrowly. *Holmquist v. State*, 425 N.W.2d 230, 231 (Minn.1988).

By statute, a county generally is liable for its torts, but the county can assert immunity as an exception to the rule, even after abuse in its exercise of discretion, against "[a]ny claim based upon the performance or the failure to exercise or perform a

discretionary function or duty." Minn.Stat. §§ 466.02, .03, subd. 6 (1996). For immunity purposes, discretionary acts are planning-level actions that require evaluating such factors as the financial, political, economic, and social effects of a given plan. *Holmquist,* 425 N.W.2d at 232. Operational-level decisions, in contrast, are those actions involving the ordinary, day-to-day operations of the government and do not receive immunity. *Id.* To determine whether discretionary immunity applies, the courts must "identify the precise government conduct being challenged." *Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 722 (Minn.1988).

■ Discretionary immunity applies in this case because the challenged conduct, the county's decision to delay the intersection improvements, occurred at the planning level. According to the undisputed testimony of the county's highway engineer, the county board initially considered upgrades to the intersection in 1991, approved the improvements in 1992, but did not schedule funding for the project until 1997 due to budgetary limitations. Because the county board reached its decision to postpone construction of improvements by balancing fiscal considerations, the trial court did not err by applying discretionary immunity. *Steinke v. City of Andover,* 525 N.W.2d 173, 175 (Minn.1994) (applying discretionary immunity to county's decision against volunteering to post drainage ditch warning signs at areas outside recognized right-of-ways, a decision that required considering safety issues, financial burdens, and possible legal consequences).

Although appellant concedes that the county's decision normally would trigger discretionary immunity, she argues that the county should not receive immunity because many collisions had occurred at the intersection, and the county had an independent duty to correct this dangerous condition. Appellant relies on a series of decisions of this court suggesting that discretionary immunity does not apply to decisions that involve warning the public of known hazards. *Ostendorf v. Kenyon,* 347 N.W.2d 834, 838 (Minn.App. 1984) (en banc) ("The State's placement of warning signs on the highway was not a discretionary act after the State had knowl-

edge of a dangerous situation where warning could be provided by additional or better signs."); *see Gutbrod v. County of Hennepin,* 529 N.W.2d 720, 724 (Minn.App.1995) ("Since there was no evidence that the crack [in the road] was dangerous or presented a dangerous condition, the presence or absence of warning signs was in the range of discretionary acts."); *Seaton v. Scott County,* 404 N.W.2d 396, 399 (Minn.App.1987) (stating that the failure to post warning signs or the failure to place guardrails on a bridge are discretionary acts "unless the County had notice of a dangerous condition"), *review denied* (Minn. June 25, 1987); *Gonzales v. Hollins,* 386 N.W.2d 842, 845 (Minn.App.1986) (stating that a city's decision to replace a semaphore with a stop sign was a discretionary act absent proof that the city had knowledge of a dangerous condition existing at the time of the accident).

■ Appellant's argument fails for several reasons. First, the supreme court has corrected this line of cases by making it clear that whether the government warned "the public of known hazards is not relevant in determining whether the conduct involved discretionary decision making." *Steinke,* 525 N.W.2d at 175. In other words, even if there is a duty to correct a hazard, the governmental agency has discretionary immunity if its corrective action involves a planning-level decision. *Holmquist,* 425 N.W.2d at 232 ("The question is not whether the State's conduct resulted in a condition posing an unreasonable risk of harm; it is whether the conduct consisted of planning or policymaking decisions (protected) or operational level decisions (unprotected)."); *see Young v. Wlazik,* 262 N.W.2d 300, 311 (Minn.1977) ("Even if the city had notice that the Harriet Street crossing was hazardous, no liability can attach to the city's failure to close the street, for that decision involves a legislative judgment balancing the risks and convenience the crossing presents."), *overruled in part on other grounds, Perkins v. National R.R. Passenger Corp.,* 289 N.W.2d 462, 466 (Minn. 1979). *Ostendorf* and similar cases are important only in illustrating implementation decisions that do not involve the evaluation of public policy considerations. *Steinke,* 525

N.W.2d at 175 & n. 1. The references in these cases to hazardous conditions are only meaningful in defining a defendant's duty for negligence law purposes. *See Johnson v. County of Nicollet*, 387 N.W.2d 209, 212 (Minn.App.1986) (recognizing both an actionable duty and the existence of an operational decision).

In addition, the cases cited by appellant are distinguishable as a matter of fact because they involved known dangers that the government could correct through such relatively inexpensive remedies as guardrails or warning signs, which may not require a policy decision regarding the allocation of resources. Unlike the government entities in those cases, respondent county could not immediately remedy this dangerous condition because its budget lacked the financial resources to cover the expenses of redesigning the intersection until 1997, three years after appellant's accident.[1]

■ Appellant also challenges the dismissal of her failure to warn claim, asserting that a jury could have found that the lack of warning signs was a substantial factor in the accident. Although proximate cause generally is a question of fact for the jury, it is a question of law "where reasonable minds can arrive at only one conclusion." *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn.1995). A reviewing court need not defer to a trial court's decision on a pure question of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984). For a defendant's negligence to be the proximate cause of an injury, (1) the injury must have been foreseeable in the exercise of ordinary care, and (2) the plaintiff must show that the defendant's conduct was a "substantial factor" in bringing about the injury. *Lubbers*, 539 N.W.2d at 401.

■ Appellant submitted no evidence indicating how the lack of a warning sign was a substantial factor in creating the accident. "Mere speculation, without some concrete evidence, is not enough to avoid summary judg-

ment." *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn. 1993); *see Elias v. City of St. Paul*, 350 N.W.2d 442, 444 (Minn.App.1984) (en banc) ("A claim of causation is against the evidence when it rests on mere conjecture."), *review denied* (Minn. Oct. 1, 1984). Appellant relies exclusively on her brother's account of the accident, and he made no assertions that a warning sign would have prevented the accident. Because appellant's theory that the county's failure to post a warning sign caused the accident "is no more supported by or consonant with the facts than other theories which could be developed" that would relieve the county of liability, appellant's case rests on conjecture and does not support a finding of proximate cause. *Zinnel v. Berghuis Constr. Co.*, 274 N.W.2d 495, 499 (Minn. 1979); *see Holmquist*, 425 N.W.2d at 235 (finding no proximate causation by state's failure to post narrow shoulder warning sign because driver produced no evidence connecting the change in the width of the shoulder and the driver's accident); *Elias*, 350 N.W.2d at 443–44 (finding no proximate causation by city's failure to install guardrails where injured motorists produced no evidence regarding control of the vehicle or the accident itself); *Abbett v. County of St. Louis*, 474 N.W.2d 431, 434 (Minn.App.1991) (finding no proximate causation by county's failure to install guardrails where injured driver introduced no evidence showing what caused his vehicle to leave the road). Moreover, the brother's uncertainty as to the exact cause of the accident does not create a jury question "simply because there is some metaphysical doubt as to a factual issue." *Bob Useldinger & Sons*, 505 N.W.2d at 328. The lack of concrete evidence indicating that the failure to place a warning sign caused the accident entitled the county to summary judgment.

## DECISION

The trial court correctly found that the county had immunity because the county's

---

[1] There is no evidence in the record to suggest that respondent could install a turn lane or a turn signal as an ordinary part of its current budget.

decision to delay the installation of road improvements involved the balancing of policy considerations, regardless of any known dangers at the intersection. There was also no error in dismissing appellant's alternative claim that the county breached a duty to give warnings.

**Affirmed.**