Robert UNZEN, et al., Respondents,

v.

CITY OF DULUTH, Appellant (A04–80), Defendant (A04–81),

Steve Dornfeld, Inc., Defendant (A04–80), Appellant (A04–81).

Nos. A04–80, A04–81.

Court of Appeals of Minnesota.

Aug. 3, 2004.

Harry L. Newby, Jr., Harry L. Munger, Newby, Lingren & Newby, Cloquet, MN, for respondents.

M. Alison Lutterman, Deputy City Attorney, Duluth, MN, for appellant City of Duluth.

Jerome David Feriancek, Jr., Thibodeau Johnson & Feriancek PLLP, Duluth, MN, for appellant Steve Dornfeld, Inc.

Considered and decided by HALBROOKS, Presiding Judge; TOUSSAINT, Chief Judge; and MINGE, Judge.

## OPINION

TOUSSAINT, Chief Judge.

In this personal-injury action arising from a fall inside a municipal-golf-course clubhouse, appellants contest the district court's denial of their motions for summary judgment on immunity grounds. Because neither appellant is entitled to statutory immunity under the circumstances of this case, we affirm.

## FACTS

On October 22, 2001, respondent Robert Unzen fell as he was walking down a flight of stairs in the Enger Park Golf Course clubhouse. The course is owned and maintained by appellant City of Duluth (the city). Appellant Steven Dornfeld, Inc. (Dornfeld) performs services related to the golf course; specifically, Dornfeld contracted with the city to operate concessions at the clubhouse, to "maintain the kitchen, toilets, and main lobby of the club house in a neat and presentable condition and according to the Health Department standards for eating establishments," and to handle "golf operations," such as ticket sales, a pro shop, and club and cart rentals.

The record indicates that the stairs at issue, which led from the main floor to the restrooms below, were covered with a rubberized matting surface. A metal "nosing" was placed at the edge of each stair, which allegedly protruded slightly above the stair's rubber tread. Unzen asserts that he tripped over the metal nosing on a stair

near the top of the stairwell, and fell down the stairs.

Unzen commenced this action on March 5, 2002, claiming that his injuries were a direct result of the city's negligent design and maintenance of the clubhouse and stairwell. After preliminary discovery, Unzen amended his summons and complaint to include Dornfeld as a defendant, claiming that the careless manner in which Dornfeld operated the clubhouse was an additional factor causing his injuries.

The city and Dornfeld filed separate motions for summary judgment, asserting that they were immune from suit under the recreational-use immunity statute, Minn.Stat. § 466.03, subd. 6e (2002). Alternatively, the city argued that it was protected by discretionary immunity under Minn.Stat. § 466.03, subd. 6 (2002). Unzen, in turn, filed his own motion for summary judgment, seeking a court declaration that recreational-use and discretionary immunity were unavailable to the city and that Dornfeld was not protected by statutory immunity because it was an independent contractor instead of an agent.

After a hearing on the matter, the district court denied the summary judgment motions of the city and Dornfeld. It determined however, that the city was not immune from suit under the discretionary-immunity statute, was generally covered by the recreational-use immunity statute, but was nevertheless liable under its exception. Both Dornfeld and the city now appeal, and Unzen has filed a notice of review regarding the court's determination that the clubhouse was recreational property.

## ISSUES

I. Did the district court err in determining that appellants were not protected by recreational-use immunity?

II. Did the district court properly determine that the city was not protected by discretionary immunity?

## ANALYSIS

The existence of governmental immunity is purely a question of law, distinct from a defense to the merits of a plaintiff's claim. *Elwood v. County of Rice,* 423 N.W.2d 671, 675 (Minn.1988). We review immunity issues *de novo,* without deference to the district court. *Landview Landscaping, Inc. v. Minnehaha Creek Watershed Dist.,* 569 N.W.2d 237, 240 (Minn.App.1997), *review denied* (Minn. Dec. 22, 1997); *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 786 (Minn.1989).

### I.

All parties to this action claim that the district court erred in determining that the clubhouse was "within the type of property contemplated by the parks and recreation immunity statute," but that appellants could still be found liable because the statute does not extend to "conduct that would entitle a trespasser to damages against a private person." Unzen claims that the district court improperly determined that the clubhouse was recreational property. The city contends that the court's recreational-property determination was correct, but that it erred in its application of the accepted legal standards to the undisputed facts. Dornfeld argues that it is entitled to immunity because it is an agent of the city, and Unzen's claim "is premised entirely upon the condition of the recreational property which was under the control of the City."

### A. Clubhouse as Recreational Property

Unzen asserts that the Enger Park Golf Course may be divided into two distinct operations: (1) the outside golf course,

which Unzen concedes is clearly "recreational property" as intended by statute; and (2) the clubhouse, which provides the general public with a number of services only tangentially related to recreational activity. He contends that Minnesota law only extends statutory immunity to buildings "where the injury occurred to users while *engaging in recreational activities within the building* or when injuries occurred on, or in, a building *designed to house recreational activities.*" The clear language of the statute, however, indicates that it should not be interpreted as narrowly as Unzen urges.

■ Minn.Stat. § 466.03, subd. 6e (2002) provides immunity to a municipality from [a]ny claim based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, *or for the provision of recreational services* ... if the claim arises from a loss incurred by a user of park and recreation property or services. (Emphasis added).

The statute does not provide explicit examples of municipal property protected by recreational-use immunity. *Merchlewitz v. Midwest 4 Wheel Drive Ass'n, Inc.*, 587 N.W.2d 652, 655–56 (Minn.App.1999). This court, however, has noted that "subdivision 6e covers claims arising from alleged negligence based on the provision of recreational services and unrelated to the condition of the recreational property." *Habeck v. Ouverson*, 669 N.W.2d 907, 910 (Minn.App.2003), *review denied* (Minn. Dec. 23, 2003). Coverage under subdivision 6e is thus is not based on what the injured person was doing, but on the intended recreational function of the property.

Here, it is clear that the property as a whole was intended for golf, undisputedly a recreational activity under the statute.

The clubhouse, in providing tickets, lockers, restrooms, and rental equipment, is operated to provide recreational services in support of golfing. Because the clubhouse is part of the same property as the golf course, provides services related to the course, and facilitates use of the course, the district court properly determined that the municipal-golf-course clubhouse is subject to the same recreational-use immunity as the course itself under subdivision 6e.

*B. Application of Restatement*

Notwithstanding the clubhouse's protected status as recreational property under subdivision 6e, a municipality or its agent may still be liable for "conduct that would entitle a trespasser to damages against a private person." Minn.Stat. § 466.03, subd. 6e; *Fear v. Indep. Sch. Dist. 911*, 634 N.W.2d 204, 213 (Minn.App. 2001), *review denied* (Minn. Dec. 11, 2001). For purposes of determining this limited liability under the subdivision, Minnesota has adopted the standard of care owed to a trespasser found in the Restatement (Second) of Torts § 335 (1965). *Martin v. Spirit Mountain Recreation Area Auth.* 566 N.W.2d 719, 721 (Minn.1997).

■ Section 335 provides that a possessor of land is subject to liability for bodily harm caused to a trespasser by an artificial condition on the land if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespass-

ers of the condition and the risk involved.

Restatement (Second) of Torts § 335. Under this standard, "a landowner will be liable only for failing to exercise reasonable care to warn trespassers about hidden, artificial dangers created or maintained by the landowner." *Johnson v. Washington County,* 518 N.W.2d 594, 599 (Minn.1994) (citation omitted). The plaintiff bears the burden of establishing that all of the elements of section 335 have been met in order to defeat an immunity claim. *Martinez v. Minnesota Zoological Gardens,* 526 N.W.2d 416, 418 (Minn.App. 1995), *review denied* (Minn. Mar. 29, 1995).

The city concedes the district court correctly found that the stairs were manmade, that it was responsible for maintaining them, and that there were no visible warning signs in or around the staircase. It contends, however, that the court's analysis thereafter was flawed because (1) the stair's condition was not hidden because Unzen admitted that he saw the condition causing his fall; and (2) the condition was not, to the city's knowledge, likely to cause death or great bodily harm.

The city points to Unzen's deposition where he acknowledges seeing the metal edging on the stairs as he fell. It contends that because Unzen saw the metal edging, the condition was clearly visible, and that therefore the city had no duty to warn or liability. It further asserts that the district court completely failed to consider whether the object was visible rather than appreciable, *see Merchlewitz,* 587 N.W.2d at 656, and instead based its determination on evidence indicating that other people had fallen in the 40 years since the metal nosing was installed.

■ The district court notes that "[t]he evidence tends to show that the elements of Restatement § 335 are present, i.e.: that the condition was an artificial condition which ... was of such a nature that the city would have reason to believe that persons using the stairway would not discover the problem ..." The court's statement is supported by the record: Fred Bolf, a city employee who examined the steps, stated that he did not see anything wrong with the steps even after Unzen had fallen. Mark Carlson, a former Enger Park Golf Course supervisor, stated that "[i]t was difficult to observe that the metal edging was raised above the rubber floor tread on each step," and that he only discovered the condition after he himself tripped.

Thus, contrary to the city's assertions, the record supports the district court's determination that the condition causing Unzen's injury was not readily discoverable. The focus should not be on whether the metal nosing itself was visible, but rather whether the *dangerous condition* was visible. *Lundstrom v. City of Apple Valley,* 587 N.W.2d 517, 520 (Minn.App. 1998) (whether condition was hidden depends *on visibility of condition,* not on whether injured party actually saw danger); *see also Schaffer v. Spirit Mountain Recreation Area Auth.,* 541 N.W.2d 357, 361 (Minn.App.1995) (photographs taken day of accident show that large portion of barrel into which appellant skied was visible); *Martinez,* 526 N.W.2d at 419 (claim failed because appellant had seen loose steel railings causing her child's injury prior to accident). Because the evidence indicates that even though the nosing was visible, the actual dangerous condition was not, the district court's determinations on this matter shall not be disturbed.

■ Further, there is ample evidence in the record supporting the district court's conclusion that the stairs "would be to the city's knowledge a condition likely to cause death or serious bodily harm to persons if they tripped and fell." Carlson acknowledged that during his tenure at Enger

Park, approximately a dozen people fell using the stairway. He also stated that he advised Street and Park Maintenance Manager Bob Troolin that he believed the steps were dangerous. Michael Netzel, the golf course superintendent at the time of Unzen's fall, also stated that he was aware of people tripping or catching their feet on the metal nosing.

■ The city's approach to these past falls is that for 40 years after the metal nosing was installed, no one was seriously injured on the stairs. It claims, therefore, that the district court erred in determining that the condition was likely to cause death or great bodily harm. Instead, the city urges this court to consider only conditions that have "inherently dangerous propensities, such as high voltage electrical wire" as inherently dangerous conditions. We read section 335 differently. In fact, our case law is replete with instances where falling down a flight of stairs has caused death or serious bodily harm. *E.g., Muckler v. Buchl*, 276 Minn. 490, 491, 150 N.W.2d 689, 691 (1967) (causing death); *O'Connor v. M.A. Mortenson Co.*, 424 N.W.2d 92, 93 (Minn.App.1988) (requiring hip replacement), *review denied* (Minn. July 28, 1988); *Hanson v. Roe*, 373 N.W.2d 366, 368 (Minn.App.1985) (causing death). Considering the potential injuries involved with falling down a flight of stairs, a staircase may clearly be an "inherently dangerous" condition. *Cf. Johnson v. State*, 478 N.W.2d 769, 773 (Minn.App. 1991) (holding raised sidewalk joint not a condition likely to cause death or serious bodily hard), *review denied* (Minn. Feb. 27, 1992).

■ Because the district court properly concluded that the condition of the stairs (1) could not be readily appreciated and (2) was likely to cause death or great bodily harm, the court correctly determined that the trespass exception to the recreational-use-immunity statute applied.

## C. Dornfeld as agent

Dornfeld asserts that it is immune from suit because it is an agent of the city. It claims it must be considered an agent because (1) the agreement does not expressly state that Dornfeld is an independent contractor; (2) the city "controls the means and manner of performance over all aspects of the golf course"; (3) the city compensates Dornfeld for services rendered; (4) materials, tools, and other equipment are provided by the city; (5) the city retained control over the golf course while Dornfeld operated the clubhouse; (6) the city retained the right to terminate Dornfeld; and (7) both this court's and the district court's silence on the matter was an implicit determination that it was an agent of the city. Notwithstanding these assertions, we are convinced by the record that Dornfeld is an independent contractor rather than an agent.

■ A five-factor test is applied to determine whether one is an employee or an independent contractor:

(1) The right to control the means and manner of performance;

(2) The mode of payment;

(3) The furnishing of materials and tools;

(4) The control of the premises where the work is done; and

(5) The right of the employer to discharge.

*Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964). The most important of these factors is the right of the employer to control the means and manner of employment. *Id.*

■ Here, according to the terms of the agreement, Dornfeld was given considerable latitude with regard to concessions operations, operation of pro-shop facilities, and day-to-day course operations. And

although the city paid Dornfeld $40,000 annually for its services, Dornfeld retained 100% of the commissions from concessions, rental revenues, pro-shop revenues, and golf-lesson revenues. It also purchased all of its inventories, and was responsible for hiring, training, scheduling, and supervising golf-course personnel.

These facts indicate that Dornfeld had (1) extensive control of the means and manner of performance; (2) was paid, for the most part, by sales generated by its own employees; (3) furnished its own inventory; and (4) almost completely controlled both the clubhouse and the golf course. Therefore, we cannot accept Dornfeld's argument that it is an agent of the city, and hold that the immunity granted to political subdivisions cannot apply to the company.

## II.

As an alternative argument to recreational-use immunity, the city claims that the district court should have granted summary judgment based on the discretionary immunity afforded municipalities under Minn.Stat. § 466.03, subd. 6. It claims that the failure to provide maintenance to the stairs at issue was part of an overall policy that weighed the urgency of the repair in light of the city's limited financial resources. Though the city argues at length that its *failure to repair* the stairs is protected by discretionary immunity, it completely fails to address its potential liability for *failure to warn.*

■■■■■ By statute, a municipality generally is liable for its torts, but the municipality can assert immunity as to "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty." Minn.Stat. §§ 466.02, 466.03, subd. 6 (2002). For immunity purposes, discretionary acts are planning-level actions that require evaluating such factors as the financial, political,

economic, and social effects of a given plan. *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn.1988). Operational-level decisions, in contrast, are those actions involving the ordinary, day-to-day operations of the government and do not receive immunity. *Id.* To determine whether discretionary immunity applies, the courts must "identify the precise government conduct being challenged." *Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 722 (Minn. 1988).

Here, the city provides ample reasons why discretionary immunity should apply to its failure to repair or replace the metal nosing prior to the accident. The city is responsible for maintaining some 300 sites. And due to the city's limited budget, it cannot respond to every maintenance request and must prioritize its projects accordingly. It therefore developed its so-called "reaction-based" policy, giving higher priority to "work orders that are an immediate hazard and those items for which the cost of delay is deemed excessive," and giving low priority to those conditions that "are still functional, but could be improved."

It seems likely from the record, therefore, that in delaying repair of the stairs, the city conducted "the evaluation and weighing of social, political, and economic considerations underlying public policy decisions" that invoke discretionary immunity. *Holmquist*, 425 N.W.2d at 233. It considered the stairs "low priority" because they were not in a state of disrepair and the city had received no specific work order on the stairs prior to Unzen's fall. And even if the city's prioritization were incorrect, the statute provides immunity to the city whether or not its discretion was abused. Minn.Stat. § 466.03, subd. 6; *Nguyen v. Nguyen*, 565 N.W.2d 721, 722–23 (Minn.App.1997).

■■■ Notwithstanding this immunity for failure to repair, nothing in the record

suggests that the same public policy considerations were made in *failing to warn* its invitees about the condition of the steps.[1] In fact, the city does not even address Unzen's failure to warn argument at all in its discretionary immunity analysis. Our case law has made clear that the burden is on the municipality to "produce evidence [that] its conduct was of a policy-making nature." *Zank v. Larson*, 552 N.W.2d 719, 721 (Minn.1996) (quoting *Steinke v. City of Andover*, 525 N.W.2d 173, 175 (Minn.1994)).

Here, the record reflects that the city employees have known about the stairs' potential hazard for years. Despite this knowledge, no signs or other warnings were provided to the public concerning the stairs' condition.

 When a known danger may be corrected through relatively inexpensive remedies, such as warning signs, it may not be necessary for the municipality to make any policy decisions regarding the allocation of resources. *Nguyen*, 565 N.W.2d at 724. When no policy decisions are made, this action or inaction is an "operational-level" decision that does not receive immunity. *Id.* at 723. Because the city has failed to show that its failure to warn was policy-based, the district court properly ruled that discretionary immunity may not be applied.

## DECISION

Because neither appellant is entitled to recreational-use immunity under the circumstances of this case, and given that a municipality may not claim discretionary immunity without evidence of policy-based decision-making, we affirm the district court's denial of summary judgment.

**Affirmed.**

---

1. The district court held that the trespasser standard of care also applied to statutory discretionary immunity. This conclusion is erroneous; the statute is silent as to standard of care, and therefore the invitee/licensee standard of care applies under these circumstances. *See* Minn.Stat. § 466.03, subd. 6.