Mark PROKOP, et al., Appellants,

v.

**INDEPENDENT SCHOOL DISTRICT # 625, Respondent.**

**No. A07–1716.**

Court of Appeals of Minnesota.

Aug. 19, 2008.

Sharon L. Van Dyck, Van Dyck Law Firm, P.L.L.C., Minneapolis, MN, for appellants.

Lawrence M. Rocheford, Jessica E. Schwie, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; SHUMAKER, Judge; and HUDSON, Judge.

## OPINION

SCHELLHAS, Judge.

Appellants challenge a district court ruling that (1) respondent Independent School District # 625 is protected from suit by recreational-use immunity, (2) the trespasser-liability exception to recreational-use immunity does not apply, (3) the landowner had no duty, and (4) the risk of the activity was assumed. Because we conclude that recreational-use immunity applies, that the trespasser-liability exception does not apply, and that respondent had no duty to protect against an obviously dangerous condition, we affirm.

## FACTS

Appellant Mark Prokop (Prokop)[1] was hit in the face by a baseball when he pitched for recreational batting practice using a batting cage located on a St. Paul public-school field. The batting cage was

---

1. There are two appellants in this case, Prokop and his wife, Jacqueline Prokop. In this opinion, the term "Prokop" refers to Mark Prokop.

equipped with an L-screen, a piece of movable equipment used to protect a pitcher in batting practice. The L-screen is an L-shaped metal frame with netting draped over it. When pitching with an L-screen, the pitcher's face, arm, and upper body are exposed during the pitch until the ball is released, when the pitcher moves behind the screen. While using the L-screen, Prokop was struck with a ball batted by his son, when he ducked behind the L-screen. Prokop did not see the ball before it hit him and did not see whether it went through the netting. Prokop's son testified that he saw the ball head toward the screen but did not see the ball either hit or go through the netting.

Pictures of the L-screen reflect its condition shortly after the accident. Both the pictures and testimony reveal that the netting had plainly visible holes, gaps, and repair knots. Prokop's son testified that the condition of the netting could be seen and was not hidden. No one had complained to the school district about the condition of the L-screen or its netting, requested its repair, or requested its replacement.

Appellants sued respondent, claiming that Prokop's injuries were the result of respondent's negligence. The district court granted summary judgment to respondent on the bases that (1) respondent has recreational-use immunity under Minn. Stat. § 466.03, subd. 6e (2006), (2) the trespasser-liability exception to recreational-use immunity does not apply, (3) respondent owed Prokop no duty, and (4) Prokop assumed the risk of his activity. Appellants challenge these rulings, arguing that recreational-use immunity does not apply; that even if it does apply, the trespasser-liability exception also applies; and that Prokop did not assume the risk of the activity.

## ISSUES

I. Are appellants' claims barred by the recreational-use exception to municipal tort liability found in Minn.Stat. § 466.03, subd. 6e?

II. Is the trespasser-liability exception applicable so that despite recreational-use immunity, appellants should be allowed to pursue their claims?

III. Did respondent have a duty of care and, if so, did Prokop assume the risk of the activity, thereby relieving respondent of any duty?

## ANALYSIS

### I.

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). Immunity is a question of law, which we review de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn.1996).

Appellants challenge the district court's ruling that respondent is protected by recreational-use immunity under Minn.Stat. § 466.03, subd. 6e (2006). A school district is a municipality for these purposes. Minn.Stat. § 466.01, subd. 1 (2006). Though municipalities are generally liable for their torts, Minn.Stat. § 466.02 (2006), recreational-use immunity is an exception contained in section 466.03, subd. 6e. Recreational-use immunity protects against suit based on the following claims:

Any claim based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services, or from any claim based on the clearing of land, removal of

refuse, and creation of trails or paths without artificial surfaces, if the claim arises from a loss incurred by a user of park and recreation property or services.

Minn.Stat. § 466.03, subd. 6e.

The district court relied on *Unzen v. City of Duluth,* 683 N.W.2d 875 (Minn. App.2004), *review denied* (Minn. Oct. 27, 2004), to guide its analysis. Unzen was injured when he tripped over metal "nosing" affixed to a stair. 683 N.W.2d at 877–78. Unzen argued that the clubhouse in which he was injured was not part of the recreational property of a golf course and was used to provide services only tangentially related to the golf course. *Id.* at 879. This court rejected that argument, concluding that "[t]he clear language of the statute ... indicates that it should not be interpreted as narrowly as Unzen urges." *Id.* Because "the property as a whole was intended for golf"; the clubhouse "in providing tickets, lockers, restrooms, and rental equipment, [was] operated to provide recreational services in support of golfing"; and "the clubhouse [was] part of the same property as the golf course, provide[d] services related to the course, and facilitate[d] use of the course," we held that the clubhouse was covered by recreational-use immunity because "[c]overage under subdivision 6e is ... not based on what the injured person was doing, but on the intended recreational function of the property." *Id.* Based on our holding in *Unzen,* the district court in this case reasoned that the property as a whole, including the baseball field and batting cages, was recreational and that the L-screen was covered by recreational-use immunity because it facilitated the use of the property.

■ Appellants argue that the district court erred in treating movable equipment as property covered by recreational-use immunity on the ground that the statute's language covers only real property and fixtures because the terms "park" and "open area" can only refer to real property. But the inquiry under *Unzen* is not limited to whether real property or fixtures are at issue. The question under *Unzen* is more broadly whether the property as a whole was recreational and whether the portion at issue facilitated the use of recreational property.

Appellants argue that a proper and instructive application of the recreational-use immunity statute is found in *Habeck v. Ouverson,* 669 N.W.2d 907, 910 (Minn.App. 2003), *review denied* (Minn. Dec. 23, 2003). In *Habeck,* this court concluded that operation of a tractor-trailer by a county agent constituted the provision of a recreational service covered by recreational-use immunity. 669 N.W.2d at 910–11. Appellants also cite *Lloyd v. City of St. Paul,* 538 N.W.2d 921, 924 (Minn.App.1995), *review denied* (Minn. Dec. 20, 1995), in which we applied recreational-use immunity to a municipal employee's use of a paddleboat. Appellants rely on these cases for the proposition that personal property is not "property" for purposes of the recreational-use immunity statute, arguing that this court applied the recreational-use immunity statute in these cases *only* because the injuries occurred when the personal property was being used by a municipal employee or agent in the provision of recreational services.

Appellants' reliance on *Habeck* and *Lloyd* is misplaced. In these cases, we did not conclude that personal property is not "property" for purposes of the recreational-use immunity statute. In *Habeck,* we specifically rejected the argument that for purposes of the recreational-use immunity statute, "property" means only real property or fixtures. 669 N.W.2d at 910. Noting that the district court in *Habeck* had

followed foreign authorities that restrict the meaning of "property" to real property or fixtures, we explicitly "decline[d] to follow these authorities to construe Minnesota's recreational-use immunity statute." *Id.* Accordingly, in this case, we follow the *Habeck* court and reject appellants' argument that "property" for purposes of the recreational-use immunity statute is limited to real property or fixtures.

■ Appellants argue that even if our caselaw supports a conclusion that recreational equipment is covered under the recreational-use immunity statute, we should treat safety equipment differently. This argument is unpersuasive. The statute and cases suggest no difference in treatment between recreational property in the form of real estate, fixtures to real estate, movable equipment, or safety equipment. The district court properly analyzed this case under *Unzen* when it determined whether the property as a whole had a recreational function and whether the equipment at issue facilitated the use of recreational property. The district court correctly concluded that the fields are recreational property, that the L-screen facilitates use of recreational property, and that this claim arising from use of the L-screen is therefore barred by recreational-use immunity.

## II.

Recreational-use immunity is subject to the exception that it does not provide immunity "for conduct that would entitle a trespasser to damages against a private person." Minn.Stat. § 466.03, subd. 6e. Appellants argue that even if recreational-use immunity applies, the trespasser-liability exception also applies. To survive summary judgment on this issue, a plaintiff must demonstrate a question of material fact on the issue of whether the defendant's conduct would cause a private person to be liable to a trespasser. *Zacharias v. Minn. Dep't of Natural Res.*, 506 N.W.2d 313, 320 (Minn.App.1993), *review denied* (Minn. Nov. 16, 1993).

■ Minnesota courts use the standard for liability to adult trespassers set forth in the Restatement (Second) of Torts § 335 (1965). *Green–Glo Turf Farms, Inc. v. State*, 347 N.W.2d 491, 494 (Minn. 1984). Under this standard, respondent will be liable "only if (1) the artificial condition is likely to cause death or serious bodily harm; (2) the landowner has actual knowledge of that danger; and (3) the danger is concealed or hidden from the trespasser."[2] *Lundstrom v. City of Apple Valley*, 587 N.W.2d 517, 520 (Minn.App. 1998).

The district court found no trespasser liability under this standard because respondent had no knowledge of any danger from the L-screen and the condition of the L-screen was not hidden. Appellants argue that respondent knew or should have known of the danger and that the weakness of the L-screen was hidden.

---

**2.** Section 335 reads as follows:

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or seriously [sic] bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

Restatement (Second) of Torts § 335.

■ The district court was correct to conclude that respondent had no knowledge of any danger posed by the L-screen. Nothing in the record tends to show that respondent had any knowledge of a problem. The record demonstrates without dispute that no complaint, request for repair, or request to replace the L-screen had been made. The lack of complaints has been held to be sufficient to demonstrate lack of knowledge. *See Stiele ex rel. Gladieux v. City of Crystal,* 646 N.W.2d 251, 255 (Minn.App.2002) (stating that plaintiff had not satisfied the knowledge requirement when the city had received no previous complaints or indications that signposts might be dangerous).

Appellants argue that there are fact questions as to whether actual knowledge is present in this case as the result of school district officials seeing the L-screen, and as to whether respondent should have known of the danger. But it is not enough that school district officials saw the L-screen because the actual knowledge required is knowledge of a dangerous condition presented by the L-screen. *See id.* (stating that plaintiff had to show that the city "knew about any danger" posed by a condition). Appellants next argue that respondent should have known of the danger, arguing that the danger posed by the L-screen was obvious. But this applies a constructive-knowledge standard. Our most recent precedential case on point establishes that actual knowledge is required. *Lundstrom,* 587 N.W.2d at 520 (stating that under section 335 a landowner must have "actual knowledge" of a concealed dangerous condition); *but see Noland v. Soo Line R.R. Co.,* 474 N.W.2d 4, 6 (Minn.App.1991), *review denied* (Minn. Sept. 13, 1991) ("A plaintiff is not required to show a landowner had actual knowledge that an artificial condition was dangerous . . . ."). As previously noted, no fact in the record suggests that respondent had

actual knowledge of a dangerous condition; thus, the district court was correct to conclude that the element of knowledge is not demonstrated in this case.

■ Appellants challenge the district court's conclusion that the condition of the L-screen was not hidden. Based on the testimony of Prokop and his son and the pictures in the record that reveal that the holes, gaps, and repairs in the L-screen were in no way hidden, the court concluded that the condition of the L-screen was open, obvious, and readily observable. Appellants argue that there is a fact question as to whether a user of the L-screen could be expected to know that it was dangerous by observing that it had holes and had been repaired. But whether the condition is hidden depends on its visibility, not on whether the plaintiff saw the condition and actually understood it to be dangerous. *Lishinski v. City of Duluth,* 634 N.W.2d 456, 459 (Minn.App.2001), *review denied* (Minn. Jan. 15, 2002); *see also Lundstrom,* 587 N.W.2d at 520 ("Whether a condition was hidden depends on the visibility of the condition, not on whether the injured party actually saw the danger.") "If a brief inspection would have revealed the condition, it is not concealed." *Lishinski,* 634 N.W.2d at 459 (quotation omitted). Appellants argue that *Unzen* demonstrates that the danger of the condition had to be perceived. In *Unzen,* where metal "nosing" on stairs caused a fall, this court looked to testimony that stated "[i]t was difficult to observe that the metal edging was raised above the rubber floor tread on each step." 683 N.W.2d at 880. This court concluded that although the nosing itself was visible, the dangerous condition of the nosing was not visible. *Id.*

Appellants' reliance on *Unzen* is misplaced. In *Unzen,* the danger presented by the nosing was that it was raised above

the other portion of the stairs. That condition was not plainly visible. In this case, the dangerous condition of the L-screen—that it had holes, gaps, and had been repaired in some places—was plainly visible and in no way hidden.

Because appellants cannot satisfy two elements of trespasser-liability in this case, the district court correctly concluded that the trespasser-liability exception to recreational-use immunity does not apply.

## III.

The district court also concluded that respondent owed no duty of care and that even if a duty was owed, Prokop assumed the risk of his activity. The doctrine applied by the district court is called primary assumption of risk, which acts as a complete bar to a plaintiff's recovery. *Schneider ex. Re. Schneider v. Erickson,* 654 N.W.2d 144, 148 (Minn.App.2002). Primary assumption of risk applies where "parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks." *Wagner v. Thomas J. Obert Enter.,* 396 N.W.2d 223, 226 (Minn.1986) (quotation omitted). "As to these risks, the defendant has no duty to protect the plaintiff...." *Id.* (quotation omitted).

"The first step in determining whether primary assumption of the risk applies is to determine whether the defendant owed a duty to the plaintiff." *Snilsberg v. Lake Washington Club,* 614 N.W.2d 738, 744 (Minn.App.2000) (quotation omitted), *review denied* (Minn. Oct. 17, 2000). This is the first step because "[i]f no duty exists there is no need to determine whether a person assumed the risk thus relieving the defendant of the duty." *Baber v. Dill,* 531 N.W.2d 493, 495 (Minn.1995). Appellants do not argue that the district court erred in concluding that there was no duty; rather, they argue that

Prokop did not assume the risk of the activity. Because a duty must be present for the assumption-of-risk analysis to apply, implicit in appellants' argument is a challenge to the district court's ruling that there was no duty.

Here, landowner liability to trespassers is the appropriate duty to consider. "[A] landowner's duty of reasonable care does not extend to warn or protect against risks which the trespasser knew or, from the facts, should have known." *Doe v. Brainerd Int'l Raceway, Inc.,* 533 N.W.2d 617, 621 (Minn.1995). The duty does not extend to protect from "situations where the risk of harm is obvious or known to the plaintiff." *Snilsberg,* 614 N.W.2d at 744. In *Snilsberg,* an injury occurred when the plaintiff dove off a dock into shallow water. *Id.* This court said the risk "was the common-sense danger that the water off the shorter service dock may have been too shallow for diving." *Id.* In this case, the district court concluded that the condition of the L-screen was obvious, stating that anyone observing it would see "its condition and that it had a number of holes that would allow a baseball to pass through." This conclusion is supported by the record and demonstrates that the risk was obvious and, thus, that no duty was owed. Because no duty was owed, we do not reach Prokop's assumption-of-risk argument.

## DECISION

Because the field and batting cages are recreational property and the L-screen was provided to facilitate the use of recreational property, appellants' claim arising from the use of the L-screen is barred by recreational-use immunity. Further, because respondent had no actual knowledge of a dangerous condition and the condition was not hidden, the trespasser-liability exception to recreational-use immunity does

not apply. Finally, because the condition was obvious, respondent owed no duty to appellants to protect against the condition.

**Affirmed.**