*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0723**

Simon McCullough,
Respondent,

vs.

City of Red Wing,
Appellant.

**Filed December 27, 2016
Affirmed
Jesson, Judge**

Goodhue County District Court
File No. 25-CV-14-2347

Paul Peterson, Jason L. DePauw, Harper & Peterson, P.L.L.C., Woodbury, Minnesota (for respondent)

Patrick L. Arneson, League of Minnesota Cities, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Cleary, Chief Judge; and Jesson, Judge.

## UNPUBLISHED OPINION

**JESSON**, Judge

Appellant City of Red Wing challenges the district court's denial of its motion for summary judgment after the district court concluded that the city is not entitled to assert recreational-use immunity as a matter of law in an action brought by respondent Simon McCullough, who sustained injuries when a section of a concrete wall fell on him as he

swung in his hammock.  Because there are genuine issues of material fact regarding whether recreational-use immunity applies, we affirm.

**FACTS**

A hundred-year-old park sits in the middle of Red Wing.  In the early 1900s, a limestone retaining wall with a cast-concrete balustrade was constructed in the park.  The balustrade consists of a concrete lower rail, concrete balusters (or spindles), and a concrete upper rail.  The balusters can weigh up to 100 pounds, and the railings weigh about 300 pounds.  Each baluster is attached to the railings by a four-inch pin made from rebar with mortar surrounding it.  Some portions of the balustrade are adjacent to limestone pillars that rise above the rest of limestone wall.  Other than to the balusters or an adjacent upper rail, the upper rail does not attach to any other part of the balustrade or limestone wall.

Although the city repaired the balustrade over the years, the wall's design has not changed.  The wall is often used as a decorative backdrop for photographs.  People sit on and lean against the balustrade.  Depending on the section of the wall, there is a seven-to-ten-foot drop from the top of the balustrade to the grass below.  People have picnics and lounge directly beneath the wall near its base.

The wall remained intact until its deteriorating condition became apparent in the mid-2000s. Sections of the balustrade became loose.  A section collapsed and was repaired. The city received two complaints and a vendor report about the balustrade, noting concerns about the wall's condition during this period of time.  Despite these concerns, there are no reports of injury from the balustrade until 2011.  Indeed, a month before the injury that forms the basis of this appeal, the city repaired and replaced balusters along the wall.

On October 9, 2011, Simon McCullough went to the park to lounge in his hammock. He attached each end of his hammock to different balusters on the wall. He sat in the hammock for 15-20 minutes before his friends arrived to join him. One friend slung his hammock to the balustrade wall as well. While McCullough's and his friend's hammocks were not attached to the same baluster in that section of the wall, their hammocks were secured to one of the three balusters that supported the same section of upper rail. McCullough weighed approximately 145 pounds, and his friend weighed 150 pounds. As soon as the friend climbed into his own hammock, three balusters and the railing they supported fell off the wall. McCullough suffered severe injuries, including a broken neck, a nearly severed ear, and a traumatic brain injury.

McCullough sued the City of Red Wing in negligence for the injuries he sustained. He claimed that the city failed to properly inspect and maintain the balustrade. The city moved for summary judgment, claiming that it was insulated from McCullough's claims by recreational-use immunity. *See* Minn. Stat. § 466.03, subd. 6e (2014).[1]

The district court concluded that genuine issues of fact exist regarding the availability of recreational-use immunity and denied the city's motion. Generally, an order denying summary judgment is not appealable. *McGowan v. Our Savior's Lutheran*

---

[1] The city also claimed that the statute of repose barred a claim for any injury which may have resulted from the wall's negligent construction or design. *See* Minn. Stat. § 541.051, subd. 1(a) (2014) (barring a claim arising out of a defective improvement to real property if not brought within two years of discovery of filing or within ten years after substantial completion of the construction). The district court granted the city's motion on the statute-of-repose defense, limiting McCullough's claims to those arising out of negligent maintenance.

*Church*, 527 N.W.2d 830, 832 (Minn. 1995). But the collateral-order doctrine permits interlocutory review because the district court's order made a final determination that the city is required to defend against McCullough's claims, and such an order is effectively unreviewable in a later appeal. *Kastner v. Star Trials Ass'n*, 646 N.W.2d 235, 239-40 (Minn. 2002); *see Johnson v. Jones*, 515 U.S. 304, 314, 115 S. Ct. 2151, 2157 (1995) (explaining that immunity issues are distinct from the merits of the action). This appeal follows.

## D E C I S I O N

The doctrine of sovereign immunity historically prevented lawsuits against the state and its municipalities without their consent. *Nusbaum v. Blue Earth Cty.*, 422 N.W.2d 713, 717 (Minn. 1988). Following a national trend to abolish the doctrine, Minnesota abolished sovereign immunity with respect to both state and municipal tort liability. *See Nieting v. Blondell*, 306 Minn. 122, 132, 235 N.W.2d 597, 603 (1975); *Spanel v. Mounds View Sch. Dist. No. 621*, 264 Minn. 279, 281, 118 N.W.2d 795, 796 (1962). In its place, the doctrine has been replaced with statutory immunity. *See* Minnesota Municipal Tort Liability Act, Minn. Stat. §§ 466.01-.15 (2014).

While municipalities have waived sovereign immunity regarding most tort claims, an exception exists relating to parks and recreation areas. Minn. Stat. § 466.03, subd. 6e (insulating municipalities from lawsuits based on the maintenance of parks if a claim arises from a loss incurred by a park user). But there is an exception to this exception: a municipality owes the same duty of care to users of a park that a private landowner owes to trespassers. *Id.* Under this "trespasser exception," a landowner is liable when (1) the

4

landowner creates or maintains an artificial condition, (2) the landowner knows the condition is likely to cause death or serious bodily harm, (3) the landowner has reason to believe that the danger is concealed or hidden from the trespasser, and (4) the landowner fails to warn of the condition and risk. *Krieger v. City of St. Paul*, 762 N.W.2d 274, 276 (Minn. App. 2009) (citing Restatement (Second) of Torts § 335 (1965)). A plaintiff bears the burden of establishing all elements in order to defeat an immunity claim. *Zacharias v. Minn. Dep't of Nat. Res.*, 506 N.W.2d 313, 320 (Minn. App. 1993), *review denied* (Minn. Nov. 16, 1993). Therefore, the city is entitled to summary judgment if it can demonstrate that McCullough cannot prove any one element of the trespasser exception.

The district court denied summary judgment on immunity because it determined that there are genuine issues of fact with respect to two elements of the trespasser exception: whether the city had knowledge of the dangerous condition and whether the condition was concealed. On appeal from a denial of summary judgment, in determining whether there are any genuine issues of material fact, we view the evidence in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Rochester City Lines, Co. v. City of Rochester*, 868 N.W.2d 655, 661 (Minn. 2015), *cert. denied*, 136 S. Ct. 849 (2016). "Immunity is a legal question reviewed de novo." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004).

In our de novo review, we first address whether there is a genuine issue of material fact regarding the city's actual knowledge of the dangerous condition. We then consider whether that condition was likely to cause serious bodily harm. Finally, we consider whether the evidence demonstrates that the city had reason to believe that the danger was

5

concealed from McCullough. Because there is sufficient evidence in the record that permits reasonable persons to draw different conclusions on the knowledge and concealment requirements of the trespasser exception, we affirm.[2]

## I. There is a genuine issue of material fact regarding the city's actual knowledge that the balustrade was likely to cause serious bodily harm.

The city alleges that the trespasser exception does not apply because there is no evidence to show that the city had actual knowledge about the condition and, even if the city did have knowledge, it did not know it was seriously likely to cause injury.[3] We disagree. While determining whether a party has actual knowledge is often a case-specific inquiry, our caselaw suggests that a lack of complaints or reported injuries may demonstrate a lack of knowledge under the trespasser exception. *Steinke v. City of Andover*, 525 N.W.2d 173, 177 (Minn. 1994), *Prokop v. Indep. Sch. Dist. No. 625*, 754 N.W.2d 709, 715 (Minn. App. 2008). The converse is true as well: a history of complaints is evidence of actual knowledge.

---

[2] We determine only that the city is not entitled to recreational-use immunity as a matter of law. As the district court pointed out in its careful opinion, the city may be eligible for immunity after proving the facts supporting each of the elements of the statute and disproving those that would support the trespasser exception.

[3] As a threshold matter, the parties dispute whether a landowner under the trespasser exception must have actual or constructive knowledge of the condition. The city urges this court to apply the actual-knowledge standard, which this court has utilized in recent years. *See Krieger*, 762 N.W.2d at 278 (following most recent precedent that actual knowledge is required); *Prokop v. Indep. Sch. Dist. No. 625*, 754 N.W.2d 709, 715 (Minn. App. 2008) (same). In contrast, McCullough argues that the trespasser exception requires only constructive knowledge. *See Noland v. Soo Line R.R.*, 474 N.W.2d 4, 6 (Minn. App. 1991), *review denied* (Minn. Sept. 13, 1991). Because we conclude that there is a genuine issue of fact regarding the city's knowledge under the stricter actual-knowledge standard, we need not resolve this dispute.

Here, the city received two complaints and a vendor report about the balustrade within ten years of McCullough's accident. While the complaints were not about the specific section of the balustrade which caused McCullough's injury, taken together, the evidence is enough to establish a factual dispute over whether the city knew that the balustrade itself was susceptible to becoming loose or falling. In April 2005, the city received a complaint which said: "[U]pright railing part—middle right half a pillar almost fell, it could kill someone if it fell on them. It almost fell over when I was leaning on the railing." In June 2010, the city received another complaint about the wall: "Balustrade wall has a loose section in the middle." There is no evidence that either specific complaint was resolved at the time. More critically, a vendor was hired by the city in February 2007 to inspect various buildings and to determine what repairs were necessary. In its report to the city, the vendor determined that the spacing between the balusters did not meet code requirements; pillars and railings were also missing. The vendor also observed that "joints are disintegrating while the system is held up by a metal cable." The vendor concluded that the balustrade wall needed to be removed and rebuilt. The recommendation referred to the entire structure, not specific sections of the balustrade.

The city argues that these facts do not demonstrate actual knowledge because of the results of its inspection of the entire balustrade one month before the collapse. In September 2011, one month before McCullough was injured, the city inspected the balustrade wall by hand and repaired or replaced all components that were loose or missing. As a result of this inspection, there were no loose or missing components in the section of balustrade that collapsed on October 9, 2011. Indeed, a report from city employees found

that section of baluster to be "rock solid." But as the district court correctly pointed out, while this is evidence (perhaps even strong evidence) that the city lacked actual knowledge that the balustrade was dangerous, it is not the only evidence on this critical point. Given the previous complaints and its own vendor's recommendation that the entire balustrade be replaced, there is a factual dispute regarding whether the city had actual knowledge that the balustrade was in a dangerous condition.

Our conclusion is consistent with caselaw, which examines whether a city received previous complaints or accident reports which would demonstrate actual knowledge. In *Johnson v. State*, we determined that the state had knowledge of a condition (albeit not a dangerous condition) because the state knew that sidewalk joints were prone to buckling. 478 N.W.2d 769, 771 (Minn. App. 1991), *review denied* (Minn. Feb. 27, 1992). And, while there was a usual repair for buckled sidewalk joints, the state decided against making a repair because the condition was not yet severe enough to require maintenance. *Id.*

In contrast, we held that the state lacked knowledge that a tree was likely to cause injury or death where frequent inspections of the tree found the tree to appear healthy and there were no reports of any danger or a problem with limbs. *Henry v. State*, 406 N.W.2d 608, 611-12 (Minn. App. 1987), *review denied* (Minn. Aug. 12, 1987). The city argues that *Henry* dictates the outcome here because, as in *Henry,* an inspection by employees shortly before the accident did not reveal anything unusual or dangerous. We disagree. The two previous complaints and the 2007 vendor report that recommended replacement of the balustrade wall are additional evidence of knowledge which was lacking in *Henry*.

8

Having recognized disputed, material facts regarding the city's actual knowledge of the wall's condition, we now turn to whether there is evidence that the condition was likely to cause serious bodily harm or death. "Any artificial condition could be likely to cause death or serious bodily harm under the right circumstances." *Johnson*, 478 N.W.2d at 773. Recognizing this, we look to whether the dangerous condition is *likely* to cause serious bodily harm, not whether serious bodily harm *might* occur. *Id.* Conditions likely to cause death or serious bodily injury typically have inherently dangerous propensities, like a high-voltage electrical wire. *See* Restatement (Second) of Torts § 335, Illustration.

The city contends that the balustrade, unlike a high-voltage wire, was not inherently dangerous at the time of the accident. The only way a wall could be inherently dangerous in a way that would meet the trespasser exception, according to the city, would be if the wall was prone to spontaneous collapse. Here, it took the unanticipated weight of two people simultaneously hanging from hammocks to cause the collapse, the city notes. Accordingly, the city asserts that a large wall is similar to a raised sidewalk joint, which this court determined was not "inherently dangerous." *Johnson*, 478 N.W.2d at 773.

We disagree. While a 100-year-old wall with a history of missing or loose balustrades and railings is not as inherently dangerous as a high-voltage wire, it is more dangerous than a raised sidewalk. This is particularly the case where each of the balustrades can weigh up to 100 pounds and the railing up to 300 pounds. This wall is similar to a staircase, which we found may be an inherently dangerous condition. *See Unzen v. City of Duluth*, 683 N.W.2d 875, 877-78 (Minn. App. 2004) (affirming denial of

9

summary judgment on city's recreational-use immunity defense following plaintiff's fall down a flight of stairs), *review denied* (Minn. Oct. 27, 2004).

Resolving the inferences in McCullough's favor, we determine that there is sufficient evidence to establish a jury question regarding whether the city had actual knowledge of a dangerous condition which was likely to cause death or serious bodily harm.

**II.     There is a genuine issue of material fact regarding whether the condition of the balustrade wall was concealed.**

Under the trespasser exception, recreational-use immunity is not available to a municipality where a dangerous condition is hidden, rather than open and obvious. *Unzen*, 683 N.W.2d at 880. And a condition is not concealed if a brief inspection would reveal the condition. *Johnson*, 478 N.W.2d at 773. Whether a condition is concealed depends on whether the condition itself was visible, not whether McCullough actually saw and appreciated the danger. *Steinke*, 525 N.W.2d at 177.

The city contends that the condition of the balustrade wall was not hidden. Both McCullough's expert and the vendor report opined that the balustrade required lateral support to be structurally sound. That lack of lateral support, the city argues, was visually obvious. Based upon McCullough's testimony and pictures of the balustrade, the upper railing was not attached to the limestone piers. The same was true for the balusters. The city asserts that McCullough should have seen this gap when he attached his hammock to the balustrade. As a result, the city urges that it had no duty to protect trespassers—or McCullough—from the condition.

10

We disagree. The balusters are attached to the limestone wall below and the railing above with a rebar pin and mortar. McCullough's expert opined that the mortar and pins were prone to rust and corrosion, which a brief inspection would not have revealed absent removing the individual balusters. Without adequate lateral support because of the disconnect with the limestone piers, the weight-bearing capacity was directed to the vertical pins. As a result, while McCullough may have been able to see some evidence of the lack of lateral support, the pins were not visible because they were inserted in the center of the balusters. Because he could not see the extent of the vertical reinforcement through the mortar and pins, McCullough contends that the condition was hidden. This disagreement, as the district court concluded, creates a genuine issue of fact on whether the dangerous condition was concealed.

The city relies on our decision in *Martinez v. Minn. Zoological Gardens*, 526 N.W.2d 416, 418-19 (Minn. App. 1995), *review denied* (Minn. Mar. 29, 1995), to support its argument that the condition of the balustrade was not hidden. In *Martinez*, we determined that floor railings, which were leaning against a wall, were not a concealed condition because a brief inspection would have revealed the fact that the railings were not fixed or secured. *Id.* But here, the balusters were fixed and secured to the lower and upper railings. While McCullough could see that the upper railing was not attached to the limestone piers, whether a brief inspection would have revealed that the balustrade could hold the combined weight with his friend is genuinely disputed because the condition of the mortar and pins was concealed. This situation is more akin to our decision in *Unzen*. 683 N.W.2d at 880. In that case, the plaintiff tripped on a metal nosing on a set of stairs.

11

*Id.* at 877. We concluded that even though the metal nosing on a staircase was visible, the actual dangerous condition—that the nosing was raised above the rubber floor tread on each step—was not. *Id.* at 880; *Prokop*, 754 N.W.2d at 715-16 (clarifying *Unzen* by reiterating that the question is whether the dangerous condition was visible, not whether the nosing itself was visible).

Viewing the evidence in the light most favorable to McCullough, the record contains evidence which would permit reasonable persons to differ on whether the dangerous condition was visible.

**Affirmed.**